UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN J. GAWLIK, | ) |
|           Plaintiff, | ) |
| v. | )    23 C 4041 |
| CHICAGO TRANSIT AUTHORITY, | ) |
|           Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, U.S. District Judge:**

Plaintiff Steven Gawlik brought this action against his former employer, Defendant Chicago Transit Authority ("CTA"), alleging wrongful discrimination based on his sexual orientation and retaliation in violation of federal and state law. Before the Court is the CTA's Motion to Dismiss Gawlik's Second Amended Complaint. For the following reasons, the motion is granted-in-part and denied-in-part.

## BACKGROUND

The following facts come from Gawlik's second amended complaint ("SAC") and are presumed true for purposes of this motion. All reasonable inferences are drawn in Gawlick's favor.

Gawlik is a bisexual man. He was hired by the CTA as a painter on May 24, 2021. Between May 24, 2021, and August 15, 2022, Gawlik had no significant workplace issues with his supervisors and colleagues and had a virtually pristine work

record. On or about August 15, 2022, Gawlik disclosed his sexual orientation to his supervisor and department foreman, Mark Pearson. Gawlik also disclosed his sexual orientation to John Esp, a painter who Gawlik believes is from Gawlik's local union. Although Gawlik never personally disclosed his sexual orientation to his department leader, Keith Heim, he believes it is very likely that either Pearson or Esp informed Heim that Gawlik is bisexual.

Gawlik says that, after disclosing his sexual orientation, he experienced a dramatic, negative shift in how he was treated by both his peers and superiors at work and how his work was monitored. He was held to different standards than his colleagues, assigned work meant for multiple people, given tighter deadlines than his peers, and accused of and written up for multiple safety infractions that he did not commit. Gawlik complained on more than one occasion to CTA Project Manager Jason DeGrace and Senior Manager Russell Henemann that he felt he was being held to a higher standard than his peers.

Pearson called Gawlik "gay" on multiple occasions. On or about January 15, 2023, Pearson texted Gawlik an image of a muscular, magenta-colored unicorn with eye makeup that was flexing its muscles surrounded by a rainbow. The image was accompanied by the words "you are."

On March 19, 2023, Gawlik contacted the CTA's Equal Employment Opportunity Unit ("EEO Unit") and the Equal Employment Opportunity Commission ("EEOC") and reported the treatment he was receiving. On March 28, 2023, the EEOC

issued a Determination of Charge and Notice of Right to Sue. The EEOC stated it would not proceed further with its investigation and made no findings as to the merits of Gawlik's claims. Gawlik was instructed that if he wanted to file a lawsuit under federal law in federal or state court, he must do so within 90 days of his receipt of the notice.

On June 13, 2023, Hanneman called Gawlik to suspend him indefinitely "pending further investigation," due to multiple alleged reports that Gawlik was creating a hostile working environment. When Gawlik asked Hanneman why he was being accused of creating a hostile work environment, Hanneman stated that it was due to Gawlik's actions on June 8, 2023, but would not say who reported the incident. Hanneman said that Gawlik was alleged to have slammed down a gallon of paint. Gawlik explained that his paint gun slipped out of his hands and a quart of paint spilled onto the table and floor. Gawlik was alone when this happened and immediately began cleaning up when Pearson walked by. The two did not speak, and to the best of Gawlik's knowledge, no one other than Pearson was aware of the spill.

Gawlik's suspension lasted until July 24, 2023. Upon returning to his workstation, Gawlik noticed many of his belongings were strewn about in a disorganized manner. Soon after this, Gawlik and Pearson got into a heated argument, and Pearson yelled at Gawlik and called him a "pansy" twice. CTA Senior Project Manager Brian Swade claimed Gawlik could have done a better job to divert the "pansy" comments if he had contacted a supervisor, even though Gawlik's supervisor

3

made the comment. As a result of the incident, Gawlick was suspended for one day; Pearson received a thirty-day suspension.

On or about October 25, 2023, Gawlik returned from vacation to find his desk turned around and an LGBTQ+ pride lanyard hanging above his desk. Gawlik filed an "official complaint" with DeGrace. Two days later, Gawlik arrived at work and noticed an apple placed on a bucket behind his desk, which Gawlik deemed to be a slur against gay people (i.e., calling him a "fruit"). He reported this incident to DeGrace.

On or about November 22, 2023, Gawlik found his desk area disturbed and a rainbow-colored, unicorn-shaped cookie hanging near his workstation. Gawlik reported the incident to DeGrace.

On or about December 7, 2023, Gawlik noticed his timecard was positioned differently than when he left the night before. When he pulled the timecard out, a rainbow unicorn keychain fell to the ground. He reported the incident to DeGrace.

On or about January 2, 2024, Gawlik observed a painter adjust another painter's spray suit to mimic the white hoods worn by the KKK. Gawlik reported the incident to DeGrace the next day. Swade called Gawlik into his office two days later to discuss the incident.

On or about January 8, 2024, Gawlik received a notice from the CTA alleging he had committed "gross misconduct/behavior violation," and was instructed to participate in an interview regarding the alleged violation.

Gawlik was interviewed by the CTA EEO Unit on January 16, 2024. During the meeting, DeGrace alleged Gawlik had left work four minutes early on two occasions on a day that the CTA's timeclock had been manipulated. DeGrace apparently took photos of Gawlik moving his car.

On January 30, 2024, the CTA issued a Notice of Discharge. The Notice stated:

> On December 28, and 29, 2023 and January 2, 2024, you committed multiple Gross Misconduct/Behavior Violations violating the Authority's rules, policies, and procedures regarding your inappropriate behavior and conduct when you were inattentive to duty, leaving your assigned work location without authorization, driving your personal vehicle in the Skokie Shops parking lot during non-break and non-lunch times, was found through investigation to be tampering with timeclocks, and falsifying your timecard.

Dkt. # 21, ¶ 43. The Notice went on to state, "Due to the severity of the violations and in accordance with the Corrective Action Guidelines, you are referred for discharge and are therefore in violation of at least the following Authority rules" including obedience to rules, responsibility for property, personal conduct, reporting for duty, and use of best judgment. *Id.*

Based on these facts, Gawlik alleges in his SAC that the CTA unlawfully discriminated against him based on his sexual orientation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/101 *et seq.* (Count III). Gawlik further alleges that the CTA retaliated against him for engaging in protected activity under both Title VII and the IHRA (Counts II and IV). CTA moves to dismiss Counts

5

II–IV, arguing that Gawlik failed to exhaust his administrative remedies as to his IHRA claims and that his retaliation claims fail because Gawlik has not plausibly pleaded a causal connection between his alleged protected activity and his alleged adverse employment action.

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss," he still must provide "more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for [his] complaint to be considered adequate[.]" *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

6

**DISCUSSION**

I. **Failure to Exhaust Administrative Remedies**

Before initiating suit under the IHRA, a plaintiff must file a charge of discrimination with the Illinois Department of Human Rights ("IDHR") "within 300 days of the claimed violation." *Gonzalzles v. Ferrara Candy Co.*, 2024 WL 640954, at *2 (N.D. Ill. 2024) (citing 775 ILCS 5/7A-102)). And, if a charge is filed with the EEOC in Illinois, it is automatically cross-filed with the IDHR. *See* 775 ILCS 5/7A-102(A-1)(1). "If the EEOC is the governmental agency designated to investigate the charge first," the IDHR will "take no action until the EEOC makes a determination on the charge." *Id.* "In such cases, after receiving notice from the EEOC that a charge was filed," the IDHR notifies the parties that, *inter alia*, the EEOC is investigating the charge and the charge "has been sent to the [IDHR] for dual filing purposes." *Id.*

After the EEOC makes its determination, the IHRA requires that the complainant "submit a copy of the EEOC's determination [to the IDHR] within 30 days after service of the determination by the EEOC on [the] complainant." *Id.* "At that time, the IDHR will either accept this determination or begin an independent investigation." *Surgit v. City of Chicago*, 2023 WL 2746000, at *4 (N.D. Ill. 2023) (citing 775 ILCS 5/7A-102(A-1)(1)(iv)). "Courts may not hear IHRA claims until the [IDHR] has made a determination as to whether there is substantial evidence of an IHRA violation and either notified a complainant of her right to proceed or dismissed the claim." *Scott v.*

7

*City of Kewanee*, 2014 WL 1302025, at *4 (C.D. Ill. 2014) (citing 775 ILCS 5/7A–102(B), (C)(4), (D)(4)).

Here, the SAC is devoid of any allegations concerning exhaustion under the IHRA. Gawlik has not alleged that he forwarded the EEOC's determination to the IDHR. Nor has Gawlik alleged that the IDHR dismissed the charges, accepted the EEOC's determination, or began its own investigation. This, says the CTA, mandates dismissal of Gawlik's IHRA claims.

In response, Gawlik argues that the CTA waived its exhaustion argument by not raising it in its motion to dismiss his first amended complaint[1], and, even if the argument is properly before the Court now, failure to exhaust administrative remedies is an affirmative defense that he need not plead around in order to state his IHRA claim.

Courts in this district are split on whether dismissal of an IHRA claim based on failure to exhaust is appropriate under Rule 12(b)(6) where the complaint is silent as to exhaustion. *See, e.g., Vance v. Amazon.Com Servs., LLC*, 2024 WL 3823176, at *2 (N.D. Ill. 2024) (Alonso, J.) ("Vance's complaint does not compel a conclusion that he failed to exhaust administrative remedies before filing suit. . . . Failure to exhaust is an affirmative defense and Vance had no obligation to mention exhaustion and pre-rebut Amazon's defense in his complaint"); *Huber v. Fox Valley Park Dist.*, 2021 WL

---

[1] The Court rejects this argument. *See Liebich v. Delguidice*, 2022 WL 874610, at *3–4 (N.D. Ill. 2022) (concluding, "[a] plaintiff can file a new complaint, and a defendant can file a new motion to dismiss. That new motion to dismiss can include new arguments. A new complaint is a new target[,]" and "[e]ach complaint is its own canvas, and so is each motion to dismiss.").

1546425, at *5 (N.D. Ill. 2021) (Tharp, J.) (the plaintiff had no obligation to plead around an affirmative defense to her IHRA claim like failure to exhaust); *Carol B. v. Waubonsee Cmty. Coll.*, 2024 WL 3069974, at 3–4 (N.D. Ill. 2024) (Maldonado, J.) (a plaintiff need not affirmatively plead exhaustion); *Zemater v. Pub. Action to Deliver Shelter Inc.*, 2024 WL 3694524, at *2 (N.D. Ill. 2024) (Daniel, J.) (IHRA claim dismissed because there was no allegation of exhaustion); *Trnava v. Chi. Cut Steakhouse, LLC*, 2021 WL 148870, at *2 (N.D. Ill. 2021) (Coleman, J.) ("Nowhere in his complaint does plaintiff even mention his IDHR complaint or whether he received any orders from the IHRC"); *Perez v. Cook Cnty. Sheriff's Off.*, 2020 WL 777288, at *3, at *8 (N.D. Ill. 2020) (Blakey, J.) (dismissal of IHRA claim on Rule 12(b)(6) motion because the plaintiff failed to allege she exhausted her remedies); *Principe v. Vill. of Melrose Park*, 2020 WL 4815908, at *4 (N.D. Ill. 2020) (Shah, J.) (dismissing IHRA claim where plaintiff did not allege he followed the administrative procedures); *Fuit v. N. Ill. Med. Ctr.*, 2022 WL 2905672, at *3 (N.D. Ill. 2022) (Johnston, J.) (although the plaintiff "alleged every detail necessary to show exhaustion with the EEOC," she failed to include exhaustion allegations with respect to her IHRA claim); *Muller v. Morgan*, 2013 WL 2422737, at *3, *5 (N.D. Ill. 2013) (Leinenweber, J.) (citing cases demonstrating "support in this District for both positions" and concluding "that those cases holding that a plaintiff must plead that she exhausted her administrative remedies have the better side of the argument").

Whether Gawlik "complied with the [IHRA] is a question easily answered," *Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. 2019), and yet, his "pleadings have failed to shed any meaningful light as to whether [he] properly exhausted [his] IHRA claims," *Butler v. Advance Trading, Inc.*, 2024 WL 2832786, at *3 (C.D. Ill. 2024). The Court agrees that Gawlik's failure to include even a single allegation regarding exhaustion under the IHRA necessitates dismissal of the claim. Gawlik's IHRA claims are therefore dismissed, without prejudice. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) (the proper resolution when a plaintiff fails to exhaust administrative remedies is dismissal without prejudice). If Gawlik exhausted his administrative remedies under the IHRA, "then the fix is simple—[he] can attach the final order." *Fuit*, 2022 WL 2905672, at *3.

## II. Retaliation Claims

To plead a retaliation claim, Gawlik must allege that he engaged in a statutorily protected activity and that he was subjected to an adverse action as a result. *Leuyano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013).

As an initial matter, the Court agrees with the CTA's argument that the disciplinary notes and writeups Gawlik received in January and March 2023 have no connection with Gawlik's alleged protected activities because they occurred prior to Gawlik's March 19, 2023 EEOC charge and complaint to the CTA EEO Unit. The Court previously pointed out that "timing is also an issue for Gawlik's retaliation claim" with respect to these allegations. Dkt. # 16, at 9. While Gawlik has added new

10

allegations and new dates to his SAC, these new allegations do nothing to remedy this defect.

The CTA argues the only protected activity Gawlik engaged in was his complaint to the EEOC back in March 2023, ten months before his termination. But Gawlik alleges he filed "official reports" with DeGrace in October, November, and December 2023 after finding items in or near his workstation that he found offensive. The CTA complains that Gawlik does not allege the substance of those complaints and argues that it is impossible to determine whether those reports constituted protected activity. However, drawing all reasonable inferences in Gawlik's favor, the incidents Gawlik complained of allow the Court to reasonably infer that Gawlik's reports to DeGrace involved wrongful discrimination based on his sexual orientation.[2]

Gawlik was terminated on January 30, 2024, and he says the amount of time between his protected activities and his termination permits the inference of retaliation. The CTA correctly points out that evidence of suspicious timing, alone, is "generally insufficient to establish a retaliatory motivation." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022). Additionally, "any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action." *Id.* The CTA argues Gawlik was discharged for a number of legitimate reasons, none of which were retaliation for Gawlik's complaints

---

[2] With the exception of Gawlik's complaint about his coworker's reference to the KKK, as that had nothing to do with Gawlik's sexual orientation.

11

of discrimination. This may be true, but that argument is better suited for summary judgment.

At bottom, Gawlik complained of discrimination for the three months leading up to his termination and had a relatively unblemished record prior to his first complaint of discrimination. At this stage, Gawlik's allegations are "sufficient to squeak past the threshold necessary to survive a motion to dismiss." *Klee v. McHenry Cnty. Coll.*, 2017 WL 3168973, at *4 (N.D. Ill. 2017) (evidence of causation can "take the form of unproblematic prior performance combined with a 'precipitous fall.'").

## CONCLUSION

For the foregoing reasons, the CTA's motion to dismiss is granted-in-part and denied-in-part. Gawlik's IHRA claims are dismissed without prejudice.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: September 10, 2024